UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) CASE NO. 20-11029-CMA |
| FARID SAMIMI, | ) |
| | ) TRUSTEE'S DECLARATION IN SUPPORT |
| | ) OF MOTION FOR APPROVAL OF SET- |
| Debtor. | ) TLEMENT AGREEMENT AND FOR |
| | ) RELATED RELIEF |

I, Edmund J. Wood, under penalty of perjury under the laws of the United States of America, hereby declare that the following is true and correct to the best of my knowledge:

1. I am over the age of 18 years and make this declaration based upon my personal knowledge.

2. I am the duly appointed trustee in the above captioned case and submit this declaration in support of the Trustee's Motion for Approval of Settlement Agreement and for Related Relief (the "Motion").

3. The Debtor filed his above-captioned case (the "Case"), around the start of the Covid-19 outbreak, on March 31, 2020 after commencing a related Chapter 7 Case for his business, H & F Construction, Inc. ("H&F").[1]

4. In the course of my investigation of the Debtor's assets and financial affairs, I discovered from the records of the King County Recorder ("KCR") available on line that the statutory warranty

---

[1] Chapter 7 Case No. 19-12895-CMA.

TRUSTEE'S DECLARATION - 1

KRIEGMAN LAW OFFICE, PLLC
1021 One Union Square
600 University Street
Seattle, WA 98101
(206) 903-0344

Case 20-11029-CMA    Doc 90-1    Filed 02/23/22    Ent. 02/23/22 13:53:48    Pg. 1 of 14

deed (the "Deed") for property of the bankruptcy estate located at 17123 NE 8th Pl, Bellevue, WA 98008 (hereafter the "Property"), under which the Debtor and his mother ostensibly shared title thereto, was possibly defective.

5. The Grantor of the Deed was Hormoz Samimi who was the father and spouse of, respectively, the Debtor and his mother, Eshra. The notarized acknowledgment in the Deed does not acknowledge the grantor-Hormoz's execution of or his signature on the Deed. Rather it recites that the Debtor appeared before the notary and acknowledged the Deed as the Debtor's voluntary act even though he was the grantee and did not sign the Deed. My analysis of conveyancing and related real estate law, particularly as it pertains to the more technical aspects of deeds, led me to conclude that the uncertainty of the outcome of potential litigation in regard to the Deed made it advisable to avoid litigation.

6. My investigation further showed that before the date that the Deed was recorded, Hormoz died and had no will. Under Washington law where a spouse dies intestate, the surviving spouse automatically becomes entitled to an undivided one half interest and the deceased spouse's children collectively become entitled to the other undivided half interest or, in this Case, a one-sixth interest each.

7. My investigation also showed the following additional relevant facts (a) according to the official death certificate for Hormoz I reviewed, he died on June 24, 2014 after suffering from metastatic stomach cancer over a period of 8 months; (b) the Deed (dated June 5, 2014); according to KCR records, was not recorded until the day after Hormoz's June 24th death (i.e., June 25, 2014); (c) prior to the Petition Date and thereafter, it appears, the Debtor resided both at the Property and at a home that he and his wife rent in California; (d) in 2017, according to KCR records and information I received from the Debtor, the Property was refinanced resulting in the mortgage listed in the Debtor's bankruptcy

TRUSTEE'S DECLARATION - 2

KRIEGMAN LAW OFFICE, PLLC
1021 One Union Square
600 University Street
Seattle, WA 98101
(206) 903-0344

Case 20-11029-CMA    Doc 90-1    Filed 02/23/22    Ent. 02/23/22 13:53:48    Pg. 2 of 14

schedules (the "Mortgage"); (e) according to the refi closing statement and personal bank records I obtained and reviewed, as confirmed by the Debtor himself, the Debtor received at least $200,000.00 cash from refinancing the Property that he used for personal and business expenditures; and (f) the Debtor is the sole signer and obligor of the promissory note secured by the Mortgage (ECF No. 42-1).

8. On May 23, 2020, I filed an objection to the Debtor's homestead exemption for the Property. ECF No. 26. The objection has not yet been scheduled for determination and the Court has not made any factual determination in regard thereto.

9. In July, 2020, I obtained a valuation of the Property based upon a comparative market analysis (CMA) he received from a real estate agent showing that the Property had a value of about $950,000. I obtained an updated CMA in December 2020 that pegged the then value of the Property at about $1,050,000.

10. In September, 2021, Eshra, Nazanin, and Neda (the "Samimi Family") asked me to sell the Property and provided their written consent thereto.

11. Upon my direction, my attorney engaged in discussions with the attorneys for the Debtor, and the Samimi Family which resulted in a mutual understanding for disposition of the Property and the execution of a written settlement agreement embodying those terms (the "Sale Related Agreement").

12. The Sale Related Agreement provided, among other things, for me to sell the Property, the Debtor's waiver of his homestead exemption, and the Estate to receive a carve-out of $85,000.00 from the net proceeds. At the time I negotiated the agreement, I had not expected the Property to sell for a gross price sufficient for the Estate to receive any proceeds after considering the estimated mortgage balance of $890,000, expected costs of sale, and the potential costs, legal uncertainties and risks for the Estate litigating claims regarding the Deed, and the Debtor's $125,000.00 homestead exemption. Thus I

TRUSTEE'S DECLARATION - 3

KRIEGMAN LAW OFFICE, PLLC
1021 One Union Square
600 University Street
Seattle, WA 98101
(206) 903-0344

Case 20-11029-CMA    Doc 90-1    Filed 02/23/22    Ent. 02/23/22 13:53:48    Pg. 3 of 14

viewed the carve-out as the best and least risky cost efficient way for the Estate to realize value in the Property.

13. In October, 2021, in anticipation of listing the Property pursuant to the Sale Related Agreement, I directed my Court-approved real estate agent to conduct a new CMA. Based on that CMA and the agent's recommendation, I approved listing the Property for a price of $1.25 million.

14. I later received an offer of $1.568 million and signed a purchase and sale agreement for that amount.

15. My attorney subsequently filed two motions, one for approval of sale of the Property and the other for approval of the Sale Related Agreement. ECF Nos. 63 and 64. Gill Investment, LLC ("Gill"), an unsecured creditor, filed an objection to both motions.

16. After a December 3, 2021 hearing on the motions, the Bankruptcy Court entered an order granting approval of the sale (the "Sale Order") and continued the hearing as to the Sale Related Motion for further briefing. I hereafter refer to the former motion as the "Contested Matter".

17. The sale closed on December 13, 2021 with the Estate receiving a net sum of $550,689.56 including refund of a utility holdback.

18. After payment of a $125,000 advance to Eshra on her undivided half interest in the Property as approved in the Sale Order, the Estate retained the net amount of $426,556.56.

19. Subsequently, through my counsel I engaged in discussions with the attorneys for the Debtor, Eshra, Nazanin, Neda, and Gill regarding the Contested Matter and a potential settlement thereof

20. In furtherance of the discussion, the parties agreed to participate in a settlement conference and to request Bankruptcy Judge Mary Jo Heston to preside over and conduct the conference.

TRUSTEE'S DECLARATION - 4

KRIEGMAN LAW OFFICE, PLLC
1021 One Union Square
600 University Street
Seattle, WA 98101
(206) 903-0344

Case 20-11029-CMA    Doc 90-1    Filed 02/23/22    Ent. 02/23/22 13:53:48    Pg. 4 of 14

21. Judge Heston accepted the parties' request and scheduled the settlement conference for January 24, 2022 (the "Conference").

22. The Conference extended all day. After extensive and intensive negotiations facilitated by Judge Heston, the parties succeeded in reaching agreement, subject to Bankruptcy Court approval, for full and final resolution of all disputed issues related to the Contested Matter which the parties confirmed on the Bankruptcy Court record before Judge Heston.

23. The parties memorialized those terms and related agreed provisions in the Settlement Agreement (the "Settlement", a copy of which is attached hereto as Exhibit A). The primary terms of the Settlement are summarized in the Motion incorporated by reference herein.

24. In negotiating and agreeing to the Settlement, I took into account and was guided by the factors for determining whether to approve bankruptcy trustee negotiated settlements contained in In re A & C Properties, 784 F.2d 1377 (9th Cir. 1986) ["A & C"].

25. The analysis I made in reaching the Settlement and agreeing thereto was further informed by the experience and knowledge I have gained from serving as a lawyer and trustee for the last several decades and the advice of my counsel.

26. The Motion sets forth in detail my analysis of the A & C factors and all other relevant considerations, based upon which I concluded that the Settlement is fair and equitable and in the best interest of creditors.

27. Accordingly, for the reasons stated in the Motion and above, I recommend that the Court grant the Motion and approve the Settlement.

_____  _____
Edmund J. Wood             Date/Place  February 23, 2020
                                       Ridgefield WA

TRUSTEE'S DECLARATION - 5

KRIEGMAN LAW OFFICE, PLLC
1021 One Union Square
600 University Street
Seattle, WA 98101
(206) 903-0344

# EXHIBIT A

# SETTLEMENT AGREEMENT

For and in exchange of the mutual promises and other good and valuable consideration exchanged hereunder, the undersigned parties enter into this Settlement Agreement (the "Agreement") on the terms and conditions set forth herein.

A. The parties to this Agreement are as follows: (a) Edmund J. Wood, solely in his capacity as bankruptcy trustee for the below identified bankruptcy case (the "Case"); (b) Gill Investment LLC ("Gill"), a creditor in the Case; (c) Farid Samimi, the debtor in the Case (the "Debtor"); (d) Eshragheigh Yazdidoust-Aval ("Eshra"), the Debtor's mother; (e) Nazanin Samimi ("Nazanin"), the Debtor's sister; and (f) Neda Samimi ("Neda"), the only other sister and sibling of the Debtor. All of the parties, each of whom represent and warrant that they are over the age of 18 years old and competent on a legal basis to enter into this Agreement, are hereafter collectively called the "parties". The parties listed above under "d" through "f" are hereafter collectively called the "Samimi Family".

B. The Debtor commenced the Case in the US Bankruptcy Court for the Western District of Washington at Seattle under Case No. 20-11029-CMA by filing a petition for relief under Chapter 7 on March 31, 2020 (the "Petition Date"). The US Bankruptcy Court for the Western District of Washington at Seattle is hereafter called the "Bankruptcy Court".

C. Edmund J. Wood (the "Trustee") is the duly appointed and acting bankruptcy trustee for the bankruptcy estate in the Case (the "Estate").

D. Among the property of the Estate is the real property located at 17123 NE 8th Pl Bellevue, WA 98008 (the, "Property"), a legal description of which is as follows: Lot 16, Block 2, Lake Hills No. 19, according to the Plat thereof recorded in Volume 67 of Plats, Page 71, in King County, Washington; Situate in the County of King, State of Washington (Tax Account No. 403900-0280-08).

E. Prior to the Petition Date, a statutory warranty deed (the "Deed") for the Property was recorded with the King County Recorder's office whereunder the Debtor's father and Eshra's husband, Hormoz Samimi ("Hormoz") was listed as the sole "grantor" and the Debtor and Eshra were listed as the sole "grantees".

F. The Trustee conducted an investigation of the Property in the course of discharging his duties in the Case. The Trustee's investigation showed, among other things, that (a) the Deed's acknowledgment identifies the party executing it as the grantee, the Debtor, rather than the grantor, Hormoz; (b) the Estate has potential claims that the Deed was void, avoidable, and/or invalid; (c) Hormoz died shortly before recordation of the Deed; (d) Hormoz died without a will; (e) no probate or other proceedings had been commenced to determine the disposition of title and interest in the Property; (f) Nazanin and Neda, under applicable bankruptcy and Washington intestacy law have potential claims that they are entitled to a one-sixth undivided interest in the Property with Eshra retaining an undivided one half interest but with the Debtor's undivided interest reduced from one half to one-sixth; and (g) pursuant to applicable bankruptcy law, the Trustee holds all right, interest and title of the Debtor in the Property (whether the Debtor's undivided interest is one half or one sixth) subject to any allowable homestead exemption therein.

1

G. The Trustee and Gill each filed timely objections to the Debtor's alleged homestead exemption for the Property which have not yet been determined; and, accordingly, the extent to which the Debtor may have any allowable homestead exemption is in dispute.

H. The Samimi Family asked the Trustee to sell the Property and confirmed their consent to any such sale in writing. The Trustee, the Debtor, and the Samimi Family thereafter executed a written agreement (the "Sale Related Agreement") for, among other things, the Trustee to sell the Property, the Debtor to waive his homestead exemption, and for division of the proceeds of sale among them. The Trustee subsequently listed the Property for sale for $1.25 million.

I. The Trustee obtained an offer for $1.568 million and signed a purchase and sale agreement for sale of the Property for that amount. Thereafter, he filed, respectively, the following two motions for approval of sale of the Property and the Sale Related Agreement: (a) Trustee's Motion for Sale of Real Property of the Estate Free and Clear of Liens and Interests and for Related Relief (ECF No. 63, hereafter the "Sale Motion"); and (b) Trustee's Motion for Approval of Settlement Agreement and for Related Relief (ECF No. 64, hereafter the "Settlement Motion").

J. Gill filed an objection to the above identified motions arguing, among other things, that the Deed though potentially defective was enforceable and binding; and that the Estate should receive more of the sale proceeds than provided in the Sale Related Agreement.

K. After a December 3, 2021 hearing on the motions, the Bankruptcy Court entered an order granting the Sale Motion (the "Sale Order") and continued the hearing as to the Settlement Motion for further briefing. The Settlement Motion is hereafter called the "Contested Matter".

L. The Trustee closed the sale of the Property on December 13, 2021. The Estate received $550,689.56 in net proceeds including refund of a utility holdback. After payment of a $125,000 advance to Eshra for an undivided half interest in the Property ($275,344.78 based upon the above identified net proceeds) as approved by the Bankruptcy Court in the Sale Order, the Estate retained the net amount of $426,556.56 ("Proceeds").

M. The parties thereafter held negotiations regarding the Contested Matter and a potential settlement thereof. In furtherance of those negotiations, the parties agreed to participate in a settlement conference. They further agreed to request Judge Mary Jo Heston of the Bankruptcy Court to preside over and conduct the conference. Judge Heston accepted the parties' request and scheduled the settlement conference for January 24, 2022 (the "Conference").

N. The Conference, which occurred as scheduled, extended all day. As a result of the Conference the parties reached agreement, subject to Bankruptcy Court approval, for full and final settlement of the Contested Matter. Before conclusion of the Conference, the parties confirmed with Judge Heston on the Bankruptcy Court record the primary terms to which they agreed. This Agreement embodies the parties' full understanding as to what they agreed on the record and includes the terms and conditions they agree are necessary to implement the settlement memorialized herein.

O. In entering into this Agreement, no party admits the validity of the other party's claims. The parties enter into this Agreement to avoid the risks, cost and inconvenience of litigation and/or any foreclosure proceeding.

Based on the foregoing, and for good and valuable consideration, the parties agree as follows:

1. This Agreement is subject to the following conditions precedent:

    1.1. Entry of a "Final Order" (as defined in paragraph 1.2 below) of the Bankruptcy Court approving this Agreement.

    1.2. A "Final Order", as used in this Agreement, means (a) an order entered by the Bankruptcy Court where no objection to the entry of the order is filed; or, (b) if an objection to the entry of an order is filed, an order where the fourteen (14) day appeal period expired without a person or entity filing a timely motion for reconsideration or an appeal of said order. If a Final Order approving this Agreement does not exist on or before 60 days from the later of the date the parties execute this Agreement or the date the motion to approve the Agreement is originally scheduled for hearing, then the Agreement shall be null and void unless extended by mutual agreement of the parties.

    1.3. Notwithstanding anything that may appear to the contrary in this Agreement, if a Final Order approving this Agreement is not entered as provided therein, the entire Agreement including but not limited its provisions containing any releases shall be deemed null and void; and the parties shall be free to pursue their respective claims (of any kind) through litigation or otherwise as each of them may deem appropriate as if the Agreement did not exist.

2. The Trustee shall pay Eshra a sum of $150,344.78 which with her previous payment of $125,000.00 (a total of $275,344.78) shall constitute full and final satisfaction of all her right, title, interest, and claim of any kind in the Property or the Proceeds. Eshra shall also have no claims or rights of any other kind in the Case (including but not limited to any claim to or right to request payment of costs of administration of any kind or for reimbursement thereof).

3. The Debtor shall be allowed a homestead exemption for the Property and the Proceeds in the sum of $80,000 (the "Homestead") which when paid shall constitute full and final satisfaction thereof. The Debtor directs the Trustee to pay all of his proceeds from the Homestead to Gill in exchange for Gill's unconditional release of its claims against the Debtor in *Gill v. H&F Construction, Inc., Farid Samimi et al.,* King County Superior Court Cause No. 19-2-19591-6 SEA. Gill shall withdraw its general unsecured claim in the Case and shall have no other claims or rights of any kind in the Case (including but not limited to any claim to or right to request payment of costs of administration of any kind or for reimbursement thereof). The Debtor also shall have no other claims or rights of any kind in the Case (including but not limited to any claim to or right to request payment of costs of administration of any kind or for reimbursement thereof).

4. The Trustee shall pay Nazanin and Neda, each, $5,000.00 for a total of $10,000.00 from the Proceeds which shall constitute full and final satisfaction of all rights, title, interests, and claims of any kind of each of them in the Property and Proceeds. Nazanin and Neda (and each of them) shall also have no other claims or rights of any kind in the Case (including but not limited to any claim or right to request payment of costs of administration of any kind or for reimbursement thereof).

5. The payments identified above for Eshra, the Homestead, Nazanin, and Neda shall be made within 7 business days after entry of a Final Order approving this Agreement.

6. The Trustee shall retain the balance of the Proceeds for disbursement upon Bankruptcy Court approval in accordance with the priorities established in the Bankruptcy Code for allowance and payment of claims and costs of administration. The Trustee agrees to limit requests for payment of costs of administration so that there will be at least sufficient funds to pay the unsecured priority claim of the Internal Revenue Service in the Case under Claim No. 9-3 for $87,559.24.

7. The parties shall cooperate in carrying out the terms of this Agreement including but not limited to preparation of appropriate pleadings for Bankruptcy Court approval of this Agreement, seeking such approval, and executing any other agreements, documents, or instruments that may be needed to consummate or further the Agreement.

8. Effective upon the date of entry of a Final Order approving this Agreement, except as to the terms of this Agreement, the parties mutually release each other from any and all claims demands, actions, of any kind or nature relating in any way to the Property or the Case. This release shall insure to the benefit of the parties' respective agents, employees, attorneys, heirs and beneficiaries. This Agreement shall be binding upon any successors, assigns, beneficiaries, heirs or legatees of the parties.

9. The parties agree and acknowledge that they enter into this Agreement voluntarily of their own free will with the benefit and advice of counsel of their own choosing. The persons affixing their signatures hereto as a party and/or on behalf of any party hereby represent and warrant that they (and each of them) are authorized to enter into this Agreement and bind the party for whom they execute the Agreement thereto. This Agreement is the product of arm's length negotiations among the parties which included an all-day settlement conference with Judge Heston. No presumption shall arise as the result of the identity of any party that drafted all or part of this Agreement.

10. Any recitals contained in this Agreement are deemed terms thereof.

11. This Agreement is not subject to amendment or modification of any kind except to the extent that all of the parties agree in writing thereto. Jurisdiction over any dispute regarding the interpretation or enforcement of this Agreement shall be committed on an exclusive basis to the Bankruptcy Court.

12. This Agreement may be executed in any number of counterparts, by originals, copies, e-mail, portable document format (also known as "pdf") or fax (signatures or e-signatures (via Docu-sign or similar services) on copies by fax or otherwise being deemed fully valid and binding), and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one Agreement.

DATED this ___ day of February, 2022

_____  
Edmund J. Wood, solely in his capacity as trustee for the bankruptcy estate of Farid Samimi

_____  
Farid Samimi

6. The Trustee shall retain the balance of the Proceeds for disbursement upon Bankruptcy Court approval in accordance with the priorities established in the Bankruptcy Code for allowance and payment of claims and costs of administration. The Trustee agrees to limit requests for payment of costs of administration so that there will be at least sufficient funds to pay the unsecured priority claim of the Internal Revenue Service in the Case under Claim No. 9-3 for $87,559.24.

7. The parties shall cooperate in carrying out the terms of this Agreement including but not limited to preparation of appropriate pleadings for Bankruptcy Court approval of this Agreement, seeking such approval, and executing any other agreements, documents, or instruments that may be needed to consummate or further the Agreement.

8. Effective upon the date of entry of a Final Order approving this Agreement, except as to the terms of this Agreement, the parties mutually release each other from any and all claims demands, actions, of any kind or nature relating in any way to the Property or the Case. This release shall insure to the benefit of the parties' respective agents, employees, attorneys, heirs and beneficiaries. This Agreement shall be binding upon any successors, assigns, beneficiaries, heirs or legatees of the parties.

9. The parties agree and acknowledge that they enter into this Agreement voluntarily of their own free will with the benefit and advice of counsel of their own choosing. The persons affixing their signatures hereto as a party and/or on behalf of any party hereby represent and warrant that they (and each of them) are authorized to enter into this Agreement and bind the party for whom they execute the Agreement thereto. This Agreement is the product of arm's length negotiations among the parties which included an all-day settlement conference with Judge Heston. No presumption shall arise as the result of the identity of any party that drafted all or part of this Agreement.

10. Any recitals contained in this Agreement are deemed terms thereof.

11. This Agreement is not subject to amendment or modification of any kind except to the extent that all of the parties agree in writing thereto. Jurisdiction over any dispute regarding the interpretation or enforcement of this Agreement shall be committed on an exclusive basis to the Bankruptcy Court.

12. This Agreement may be executed in any number of counterparts, by originals, copies, e-mail, portable document format (also known as "pdf") or fax (signatures or e-signatures (via Docu-sign or similar services) on copies by fax or otherwise being deemed fully valid and binding), and each such counterpart shall be deemed to be an original instrument, but all such counterparts together shall constitute but one Agreement.

DATED this ___ day of February, 2022

_____  
Edmund J. Wood, solely in his capacity as trustee for the bankruptcy estate of Farid Samimi

_____  
Farid Samimi

_____    _____
Eshragheigh Yazdidoust-Aval        Nazanin Samimi

_____    _____
Neda Samimi                        Gill Investment LLC, by Jaspaul
                                   Gill, its manager

5

_____  _____
Eshragheigh Yazdidoust-Aval    Nazanin Samimi

_____  _____
Neda Samimi              Gill Investment LLC, by Jaspaul
                         Gill, its manager

5

_____              _____
Eshragheigh Yazdidoust-Aval               Nazanin Samimi


_____              _____
Neda Samimi                               Gill Investment LLC, by Jaspaul
                                          Gill, its manager